Filed: 4/28/2016 6:08:30 PM
Yoon Kim
District Clerk
Collin County, Texas
By Jacqueta Miles Deputy
Envelope ID: 10368455

CAUSE NO. 417-01866-2016 _____

| | | |
|---|---|---|
| AMY WHITLEY, individually and as next friend to L.K.W., Plaintiff, | § § § § | IN THE DISTRICT COURT |
| v. | § § | _____ JUDICIAL DISTRICT |
| DR. PEPPER SNAPPLE GROUP, INC., Defendants. | § § § | COLLIN COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

**COMES NOW** Plaintiff Amy Whitley, individually and as next friend to L.K.W., (hereinafter collectively referred to as "Plaintiff"), complaining of Defendant Dr. Pepper Snapple Group, Inc. ("Dr. Pepper"), (hereinafter to as "Defendant" or "Dr. Pepper").

### I. DISCOVERY CONTROL PLAN

1.1    Plaintiffs request that this lawsuit proceed under a Level 3 Discovery Control Plan pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### II. PARTIES

#### A. PLAINTIFF

2.1    Plaintiff Amy Whitley is an individual residing in the State of Texas with her minor son, L.K.W., who has been diagnosed with autism spectrum disorder (ASD). The Whitleys are insured under the Dr. Pepper Snapple Group, Inc. Health Plan ("Plan").

#### B. DEFENDANT

2.2    Defendant Dr. Pepper Snapple Group, Inc. ("Dr. Pepper") is a Delaware corporation that maintains its principal place of business in Plano, Texas. Defendant Dr. Pepper does business in the State of Texas and offers insurance benefits to its employees under the Dr. Pepper Snapple Group Health Plan. Prior to the date of the acts and omissions hereinafter described, Defendant Dr. Pepper offered insurance benefits pursuant to the Plan to the Plaintiffs,

which provided coverage for medical services related to Autism Spectrum Disorder ("ASD") treatments and included no exclusions preventing the provision of such coverage. Defendant Dr. Pepper engaged committed torts in the State of Texas, and this proceeding arises out of Dr. Pepper's tortious conduct committed in the State of Texas. In addition, Dr. Pepper committed violations of the Texas Commission on Human Rights Act and Americans with Disabilities Act, under Title VII of the Civil Rights Act of 1964, and this proceeding arises out of those violation. Specifically, Dr. Pepper engaged in unfair, deceptive, discriminatory, retaliatory conduct and violations of the Texas Commission on Human Rights Act and Americans with Disabilities Act, under Title VII of the Civil Rights Act of 1964 for the purpose of wrongfully denying health benefits clearly encompassed by the Plaintiffs' policies of insurance and provided under the proffered Plan, improperly discriminated against Plaintiffs, and retaliated against Plaintiff Amy Whitley as a result of her attempts to secure accurate information regarding the Plan and her questioning the wrongful denial of coverage for benefits duly owed to her minor son, L.K.W., under their insurance policy. Dr. Pepper may be served with process herein by serving its registered agent for service of process at its registered office for service of process as follows:

> CT Corporation
> 1999 Bryan Street, Suite 900
> Dallas, Texas 75201-3136

### III.
### JURISDICTION AND VENUE

3.1   Subject matter jurisdiction is properly vested in this Court.

3.2   This Court also has both general and specific personal jurisdiction over Defendant. Defendant has purposefully availed itself of the privileges and benefits of conducting business in Texas, and has engaged in unfair, deceptive, discriminatory, retaliatory conduct and

violations of the Texas Commission on Human Rights Act and Americans with Disabilities Act, under Title VII of the Civil Rights Act of 1964 for the purpose of wrongfully denying health benefits clearly encompassed by the Plaintiffs' policies of insurance and provided under the proffered Plan.

3.3  Venue is proper in Collin County pursuant to Tex. Civ. Prac. & Rem. §15.002(a)(1) because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Collin County. Venue is also proper in Collin County pursuant to Tex. Civ. Prac. & Rem. §15.032 because policy beneficiaries resided in Collin County at the time the cause of action accrued.

## IV.
## ADMINISTRATIVE PROCEDURES

4.1  Prior to the expiration of 180 days from the first occurrence of the acts complained of (September 3, 2015), Plaintiff filed her Initial Charge of Discrimination with the Texas Workforce Commission - Civil Rights Division, alleging that the Defendant employer and the insurance company engaged in unlawful and discriminatory employment practices against the Plaintiff because of her need for specific health insurance as it relates to her son's disability. On January 29, 2016, the Acting District Director, Belinda F. McCallister, mailed Plaintiff a *Notice of Right to Sue* letter allowing Plaintiffs to file a lawsuit under Title VII, the ADA or GINA in a state or federal court within 90 days of her receipt of such letter. Plaintiff's statutory claim is filed within ninety days of her receipt of such letter. A copy of this notice is attached as **Exhibit "A"** and incorporated herein by reference.

4.2  All conditions precedent to the filing of this lawsuit and as required by law have been performed or have occurred.

## V.
## FACTUAL BACKGROUND

5.1    This lawsuit concerns Defendant Dr. Pepper's unlawful attempts to discriminate against Plaintiff due to Plaintiff's minor son's diagnosis of having autism spectrum disorder ("ASD") and the denial of coverage for the treatment of his ASD, and Defendant's unfair, unlawful, and unprecedented decision to deny coverage and refuse to pay Plaintiff's claims for medically necessary ASD treatments that were supposed to be covered under Plaintiff's health plan.

5.2    Plaintiff's minor son, L.K.W., sought medical evaluation related to his condition beginning in July 2015 and he was first diagnosed with ASD by The Ziggurat Group in September 2015. That diagnosis was again confirmed by Dr. Charles Mike Rios, a board certified pediatrician specializing in Developmental Pediatrics, on November 16, 2015.

5.3    During this time, and immediately once L.K.W. was undergoing medical evaluation, but before he was ultimately diagnosed with ASD, Plaintiff Amy Whitley attempted to contact the human resources department at Dr. Pepper in order to garner information related to the insurance benefits provided for the treatment of autism under the Plan. Plaintiff's first attempt to contact the HR department at Dr. Pepper was on August 11, 2015. After receiving no substantive response, on September 2, 2015, Plaintiff emailed Mary McClure at Dr. Pepper to inquire as to these benefits. A meeting was scheduled for on or about September 3, 2015.

5.4    At that time, Plaintiff was informed that ASD benefits were covered under the mental health portion of the Plan. Plaintiff requested a copy of the summary plan description for that mental health portion of the Plan, but she never received a copy in response to that request.

5.5    On November 23, 2015, Plaintiff requested an Evidence of Coverage from the HR Director at Dr. Pepper via e-mail, requesting that such Evidence of Coverage be provided within thirty days of her request. The HR Director responded by saying that certain coverage documents could be obtained from the employee Dr. Pepper Snapple Group Rewards website. Plaintiff explained that the Evidence of Coverage was not available on that website, and again requested a copy of such document. On December 1, 2015, Plaintiff was told by the HR Director at Dr. Pepper that she could provide Ms. Whitley with the summary plan description but that she was under no legal obligation to provide Plaintiff with a copy of the UHC contract.

5.6    Frustrated that the conversations with the HR department at Dr. Pepper were not proving to be fruitful, Plaintiff decided to try to get information directly from United Healthcare. On or about the last week of December 2015, Plaintiff contacted United Healthcare directly to inquire as to what ASD benefits were provided under Plaintiffs' Plan. Plaintiff was told that, under the Plan, Plaintiffs had benefits for neurobiological disorders of ASD. Plaintiff asked the United Healthcare representative what that meant, and she was provided with a brief explanation and was told that UNT Kristen Farmers Autism Center was an in-network provider under the Plan. However, when the UNT Kristen Farmers Autism Center called to verify L.K.W.'s benefits, United Healthcare stated that Plaintiff did not have ASD benefits.

5.7    After being told that Plaintiff did not have ASD benefits under her Plan, Plaintiff again contacted United Healthcare and requested that a description of the specific exclusions for ASD benefits be sent to her. Plaintiff was then told by United Healthcare that United Healthcare could not send that to Plaintiff, and that United Healthcare could only send her a copy of the actual denial letter.

5.8  As a result of her conversations with United Healthcare, Plaintiff again emailed Mary McClure, the HR Director at Dr. Pepper, on January 12, 2016 requesting a copy of the 2016 summary plan description. Mary McClure, the HR Director, responded that same day, stating that the exclusion for ABA therapy is on page 67 of the summary plan description. However, the summary plan description that was forwarded to Plaintiff in that e-mail contained provisions that were not located anywhere in the 2013 Summary Plan Description Dr. Pepper Snapple Group Health Plan ("2013 SPD") – the only summary plan description that had, up to that point, and even as of the date of this filing, been made available to Dr. Pepper employees, including Plaintiff, on their employee benefits website. The provision that had been inserted stated that the exact ASD treatment for which she had been questioning the denial of coverage for was excluded. This provision was not in the summary plan description that Plaintiff had been previously provided.

5.9  The summary plan description that was provided by the HR Director on January 12, 2016 was a 2015 summary plan description. However, the only summary plan description that Plaintiff had ever had access to was the 2013 SPD that was, upon information and belief, still the summary plan description in effect as there had been no finalized changes or updates. When Ms. Whitley inquired as to why the summary plan description provided that day was different than the one that employees had access to, and why the provisions relating to exclusions were different, the HR Director replied that in Plaintiff's version of the summary plan description, the exclusion for the applied behavioral analysis ("ABA") treatment for ASD fell under the provision stating that "vocational rehabilitation training is not a covered expense." Instead of providing any true explanation for the additional provisions that were not in the effective summary plan description,

Dr. Pepper Snapple Group, Inc.'s response completely changed, stating that the ABA treatment her son needed was excluded under a completely different provision.

5.10  In an attempt to garner some type of clarification on the inconsistent information being provided to her, Plaintiff then contacted the Speaking Up hotline provided by Dr. Pepper on January 12, 2016 in order to report the issues she had been encountering. This hotline routes through the legal department at Dr. Pepper and is a way for employees to speak up about things that may be happening at the workplace that should not be so. On January 13, 2016, Plaintiff received a telephone call from Lorie Christopher at Dr. Pepper, stating that she would be investigating what Plaintiff had reported and then would follow up with Plaintiff. On January 20, 2016, Lorie Christopher followed up with Plaintiff regarding her investigation. Lorie Christopher told Plaintiff that the exclusion was being added to the 2016 Plan and that the summary plan description that Plaintiff had been sent by the HR Director was the "in progress" version that would add that exclusion and that had not yet been finalized.

5.11  During the conversation with Lorie Christopher, Plaintiff was told that the 2013 SPD was still in effect, and that the exclusion of ABA therapy was not explicitly stated in the 2013 SPD, though it was Dr. Pepper's position that it was excluded because it falls under "vocational therapy," which is excluded. Plaintiff was also told that the summary plan description was only updated when major changes were made, and that Dr. Pepper had 90 days from the beginning of the plan year to make changes to the summary plan description. However, Plaintiff was also told that if any such changes were made, the employees would be notified of those changes in coverage.

5.12  Based on the information provided to Plaintiff, upon information and belief, the summary plan description provided to Plaintiff by the HR Director on January 12, 2016 is an "in

progress" version that had not yet been finalized or accepted, and Dr. Pepper intended to insert the provision specifically excluding ABA therapy for ASD by March 31, 2016. However, no updated summary plan description is available on the employee benefits website, as the specific page that is supposed to provide such information simply contains a message that reads, "Coming soon."

5.13  On January 29, 2016, Plaintiff further pursued her claims by filing a Charge of Discrimination with the Texas Workforce Commission – Civil Rights Division. It subsequently issued a Notice of Right to Sue to Plaintiff in response to her Charge of Discrimination. Upon information and belief, Dr. Pepper was notified that a Charge of Discrimination had been filed by Plaintiff.

5.14  Throughout this entire process, Plaintiff had been speaking with numerous individuals at Dr. Pepper regarding her situation, including the HR department, which is supposed to be her resource for information on employee benefits, as well as another employee whose child also had been diagnosed with autism. Upon information and belief, representatives in the HR department, as well as the other employee Plaintiff had confided in, had been told they could no longer speak to Plaintiff, and that there were cameras in the building that could watch what they were doing and would record if they were continuing to speak with Plaintiff. Plaintiff has also now been told that she may not discuss these issues with the HR department, but instead, all communications must go through McDermott, Will & Emery, legal counsel for the Administrative Committee appointed by the Board of Directors of the Dr. Pepper Snapple Group, Inc. Plaintiff's resources that she should be entitled to use as an employee are now being taken away from her as a result of her pursuing a discrimination claim and exercising her right as an employee to question the denial of benefits owed to her and her son under the Plan.

5.15   Due to the constraints placed on her, Plaintiff's most recent communications have been with Dr. Pepper's legal counsel. She has received multiple letters from Dr. Pepper's legal counsel regarding her requests for documentation and information pertaining to her benefits and the Plan. In a letter dated April 13, 2016, Dr. Pepper's legal counsel stated that "the Dr. Pepper Snapple Group Health Plan (Amended and Restated Effective January 1, 2013) remains in effect today, and has not been amended. There is no separate Plan Document for 2014, 2015 or 2016." However, this goes directly contrary to the multitude of representations that have continuously been made to Plaintiff throughout this ordeal.

## VI.
## CAUSES OF ACTION

### A. Violations of the Texas Commission on Human Rights Act ("TCHRA"), as amended, Americans with Disabilities Act, as amended, the ADA-AA, as amended and Title VII of the Civil Rights Act of 1964, as amended.

6.1   Plaintiff re-alleges and incorporates the allegations contained in Sections I through V as if fully set forth herein.

6.2   Plaintiff accepted employment with the Defendant Dr. Pepper Snapple Group, Inc. on or about May 12, 2008. During her approximately 8 years of employment, Plaintiff performed all the duties assigned to her with loyalty, dedication and hard work. Even after Plaintiff gave birth to her twin sons on September 7, 2011, Plaintiff excelled at all of her assigned tasks and duties and demonstrated the loyalty, dedication and hard work to which her employer had grown accustomed. As a result, Plaintiff was promoted in March, 2016.

6.3   After doctors confirmed that Plaintiff's minor son, L.K.W, suffered from a disability known as autism, Plaintiff began questioning which medical treatments for autism were covered by her health plan. Specifically, doctors highly recommended that Plaintiff begin Applied Behavior Analysis ("ABA") therapy for her son. ABA therapy is the application of the

principles of learning and motivating to encourage behaviors, which has been medically proven to help persons with autism live happy and productive lives. ABA principles and techniques can foster basic skills such as looking, listening, and imitating, as well as complex skills such as reading, conversing and understanding another person's perspective. ABA Therapy is widely recognized as a safe and effective treatment for autism and has been endorsed by a number of state and federal agencies, including the U.S. Surgeon General and the New York State Department of Health.

6.4    Plaintiff was a participant of the Dr. Pepper Snapple Group Health Plan ("Health Plan"). Plaintiff had a copy of the 2013 SPD. Plaintiff believed that this was the most current summary plan description for such Health Plan and was not given any other copy until 2016. The 2013 SPD **did not** contain any specific exclusion for ABA therapy for the treatment of autism.

6.5    On September 3, 2015, Plaintiff met with Dr. Pepper Snapple Group, Inc.'s Director of Human Resources to discuss clarification of the benefits provided by her health plan and whether ABA Therapy for Autism was covered. Plaintiff specifically asked the Director of Human Resources to show her if the Health Plan contained any exclusion for ABA therapy. The Director of Human Resources could not point to a specific exclusion for ABA therapy but instead stated that the 2013 SPD contained an exclusion for "vocational rehabilitation training" and ABA therapy would fall under that exclusion. After such date, Plaintiff received conflicting information from both Dr. Pepper Snapple Group, Inc. and United Healthcare regarding why ABA therapy was a purported exclusion. Recently, attorneys for Dr. Pepper Snapple Group, Inc. have informed Plaintiff that ABA therapy was excluded under the catch-all "Miscellaneous

Exclusions" for "Health Services and Supplies that do not meet the definition of a Covered Expense."

6.6   On January 12, 2016, Plaintiff received a copy of an amended Summary Plan Description for the Dr. Pepper Snapple Group, Inc. Standard Plan which was purportedly effective beginning January 1, 2015 ("2015 SPD"). When Plaintiff received the Summary Plan Description, the properties of the 2015 SPD indicated that the document was created and last modified on January 12, 2016.

6.7   Plaintiff, never received or was told of the 2015 SPD until January 12, 2016. Upon information and belief, the director of Human Resources for Dr. Pepper Snapple Group, Inc., Mary Mclure, amended the 2013 SPD to include a specific exclusion for "intensive behavioral therapies such as applied behavioral analysis for Autism Spectrum Disorders," after extensive questioning and challenges by Plaintiff. Changing a Health Plan to exclude certain treatments which were specifically requested by a participant, only after learning that a participant has a child which suffers from a disability and the participant questions and challenges the benefits provided by the Health Plan, is an unlawful and discriminatory employment practice that violates the Texas Commission on Human Rights Act, as amended, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended and/or ADA-AA of 2008, as amended.

6.8   The purpose of the Texas Commission on Human Rights Act is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments and Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments. *See* Tex. Lab. Code § 21.001.   42 USCS § 12112(b)(4) prohibits "excluding or otherwise denying equal jobs **or benefits** to a qualified individual because of the known

disability of an individual with whom the qualified individual is known to have a relationship or association." (emphasis added).

6.9  Plaintiff is a qualified individual under the Texas Commission on Human Rights Act, as amended, the Americans with Disabilities Act of 1990, and the ADA-AA of 2008, as amended, because of the known disability (autism) of an individual with whom she is known to have a relationship or association, namely, her minor son – L.K.W

6.10  Defendant Dr. Pepper Snapple Group, Inc. is an employer within the meaning of the TCHRA, the Americans with Disabilities Act of 1990, as amended and/or the ADA-AA of 2008, as amended. Defendant Dr. Pepper Snapple Group, Inc. did not provide equal benefits to Plaintiff, including covering medical expenses (which were not specifically excluded) associated with treating a sickness. Dr. Pepper Snapple Group, Inc. then took its discriminatory behavior up a notch by amending the Summary Plan Description of the Health Plan and back-dating the effective date in order to cover its tracks. **As further evidence of Dr. Snapple Group Inc.'s fraudulent and discriminatory behavior, even as of the date of this petition, the Dr. Pepper Snapple Group, Inc.'s intra-web only allows employees to access the 2013 SPD.** In a letter dated April 13, 2016, Dr. Pepper's legal counsel stated that "the Dr. Pepper Snapple Group Health Plan (Amended and Restated Effective January 1, 2013) remains in effect today, and has not been amended."

6.11  Dr. Pepper Snapple Group, Inc.'s overt conduct is a blatant violation of the Texas Commission on Human Rights Act, as amended, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended and/or the AOA-AA of 2008, as amended. Dr. Pepper Snapple Group, Inc. intentionally discriminated against the

Plaintiff by amending the SPD to exclude the very treatment she needed to provide for her minor son, L.K.W, as she is his primary caregiver.

6.12 The Defendant Dr. Pepper Snapple Group, its agents, servants and/or employees discharged or in some other manner discriminated against Plaintiff because of her disability by association due to her minor son's autism. Defendant Dr. Pepper Snapple Group did not change or amend the SPD until after Plaintiff challenged it on the exclusion of ABA therapy for treatment of her son's autism. Plaintiff further alleges that Dr. Pepper Snapple Group's unlawful and discriminatory acts were part of a larger unwritten plan to discriminate against employees with a disability or who are associated with persons with a disability, so as to keep Dr. Pepper Snapple Group's costs of providing healthcare benefits low.

6.13 Plaintiff was qualified for her job as a Senior Financial Analyst at the time that she suffered an adverse employment action. Plaintiff was known by the Defendant Dr. Pepper Snapple Group, Inc., at the time of the adverse employment action, to have a relative, namely her minor son, L.W, who has and continues to have a disability. The adverse employment action occurred under circumstances raising a reasonable inference that the disability was a motivating or determining factor in the Defendant Dr. Pepper Snapple Group, Inc.'s decision to modify the SPD for the Health Plan and to not provide equal benefits to Plaintiff, namely benefits to treat her son's sickness.

6.14 Additionally, representatives in the HR department, as well as the other employee Plaintiff had confided in, had been told they could no longer speak to Plaintiff, and that there were cameras in the building that could watch what they were doing and would record if they were continuing to speak with Plaintiff. Plaintiff has also now been told that she may not discuss these issues with the HR department, but instead, all communications must go through McDermott,

Will & Emery, legal counsel for the Administrative Committee appointed by the Board of Directors of the Dr. Pepper Snapple Group, Inc. Plaintiff's resources that she should be entitled to use as an employee are now being taken away from her as a result of her pursuing a discrimination claim and exercising her right as an employee to question the denial of benefits owed to her and her son under the Plan.

6.15  As a result of the discriminatory treatment and/or other wrongful conduct described above, Plaintiff has been and continues to be deprived of the medical benefits and coverage that Defendant provides to all of its other employees who do not have, or who do not associate with a person with a known disability, namely the treatment of a sickness. In turn, her minor son, L.K.W has been deprived of therapy that is widely recognized as a safe and effective treatment for autism. The delay in treatment is resulting in catastrophic results for Plaintiff's son. Plaintiff seeks both actual and mental anguish damages.

**B.  Retaliation under the Americans with Disabilities Act ("ADA"), the Texas Commission on Human Rights Act (TCHRA) and Title VII of the Civil Rights Act of 1964**

6.16  Plaintiffs re-allege and incorporate all of the allegations in Section I through V above.

6.17  Retaliation occurs when an employee has engaged in a protected activity, an adverse employment action has occurred, and a causal link exists between the protected activity engaged in by the employee and the adverse employment action that occurred.

6.18  A protected activity may consist of (1) opposing a discriminatory practice, (2) making or filing a charge, (3) filing a complaint, or (4) testifying, assisting, or participating in an investigation, proceeding or hearing. *See* Tex. Lab. Code § 21.055.

6.19  Plaintiff has established at length throughout the sections above that she

adamantly opposed a discriminatory practice and that Plaintiff had a good faith, reasonable belief that Dr. Pepper was engaging in a discriminatory practice by denying benefits for ASD treatment under the Plan. Over the course of several months, Plaintiff contacted numerous individuals and departments within Dr. Pepper, and contacted United Healthcare directly, to try to determine the ASD benefits offered under the Plan. Based on the 2013 SPD that she had access to, Plaintiff had a good faith, reasonable belief that the ABA treatment needed by her son, L.K.W., should be covered, as there was no explicit exclusion provided for in that 2013 SPD. She continued to pursue an investigation into the denial of coverage after she received conflicting information from multiple sources within Dr. Pepper on numerous separate occasions. After opposing the discrimination internally within Dr. Pepper, Plaintiff took a step further and filed a Charge of Discrimination with the Texas Workforce Commision on January 29, 2016. Dr. Pepper was notified of the filing of that charge, and subsequently obtained legal counsel to begin corresponding with Plaintiff on its behalf. Plaintiff has engaged in all four areas of "protected activity" and has been retaliated against as a result.

6.20    As a result of exercising her right to participate in such protected activity, and stand up against and report the discrimination she was encountering, Plaintiff has suffered an adverse employment action. Plaintiff no longer has the ability to exercise her right to go to the HR department at her place of employment to inquire as to her benefits and rights as an employee, and she has been prevented from conversing with certain individuals in her office at all. Plaintiff is being forced to communicate with Dr. Pepper's legal counsel. Plaintiff has further been informed that the exclusion for ABA treatment will most definitely be included in the SPD for 2016 and those treatments will explicitly be excluded. Essentially, because Plaintiff stood up and pursued her rights by opposing the discrimination that has occurred, she is and will continue

to be discriminated against and denied the health benefits that were owed to her to begin with under the 2013 SPD which was the Plan document in effect at all times applicable to the claims made herein.

6.21 As a result of the retaliation that has occurred, Plaintiff cannot engage in activity that other employees at Dr. Pepper can, and is denied access to internal resources that other employees continue to have access to. Further, in retaliation, Dr. Pepper is finalizing and implementing changes to the Plan that will explicitly exclude the treatment needed by Plaintiff's minor son, L.K.W., from this point on.

## VII.
## DAMAGES

7.01 The allegations of the above sections are repeated and incorporated as though set forth fully herein. As a proximate result of Defendant's conduct and of the events made the basis of this suit, Plaintiff bring this suit against Defendant to recover damages for the following:

(1) Actual Damages;

(2) Economic Damages;

(3) Mental Anguish Damages;

(4) Up to Treble Economic Damages;

(5) Up to Treble Mental Anguish Damages;

(6) Pre-judgment and post-judgment interest;

(7) Costs of Court;

(8) Punitive or Exemplary Damages; and,

(9) Attorney's Fees.

## VIII.
## JURY DEMAND

8.01 In accordance with Rule 216 of the Texas Rules of Civil Procedure, Plaintiff demands a trial by jury. Simultaneously with the filing of this demand, a jury fee is being paid on behalf of Plaintiff.

## IX.
## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSDERED**, Plaintiff requests that Defendant be cited to appear and answer and upon final trial that this Court award the following to Plaintiffs

1. Damages as alleged and such other amount as may be proven at trial;
2. Award Plaintiff her taxable costs, expenses and reasonable attorneys' fees;
3. Award Plaintiff treble damages and punitive damages in the highest amount allowed by law; and,
4. Award Plaintiff any such other relief as may be just and equitable in the circumstances.

Respectfully submitted,

**THE HARRIS FIRM, P.C.**
Attorneys and Counselors at Law
5050 West Lovers Lane
Dallas, Texas 75240
(214) 956-7474 Office
(214) 956-7405 Facsimile

By: /s/ Austin H. England
Dalton D. Harris III
Texas State Bar No. 09056775
Austin H. England
AUSTIN H. ENGLAND, P.C., of Counsel
Texas State Bar No. 06619750
Laura Richards Sherry
State Bar No. 24056203

**COUNSEL FOR PLAINTIFFS**