# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| AMY WHITLEY, INDIVIDUALLY AND AS NEXT FRIEND TO L.K.W. <br><br> v. <br><br> DR PEPPER SNAPPLE GROUP, INC. | § <br> § <br> § Civil Action No. 4:16-CV-00362 <br> § Judge Mazzant <br> § <br> § <br> § <br> § <br> § |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant Dr. Pepper Snapple Group, Inc.'s ("DPSG") Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. #10). After considering the relevant pleadings, the Court denies the motion.

## BACKGROUND

This lawsuit concerns DPSG's alleged discrimination and retaliation when it denied coverage for treatment of Plaintiff Amy Whitley's ("Whitley") son's autism spectrum disorder ("ASD"). Whitley's son was first diagnosed with ASD in September 2015. Before her son's diagnosis, Whitley contacted DPSG's human resources ("HR") department to inquire about the insurance benefits that covered treatment of autism under her healthcare plan (the "Plan"). The HR department informed Whitley that ASD benefits were covered under the mental health portion of the Plan. Whitley requested evidence of coverage, and the HR Director Mary McClure ("McClure") directed Whitley to the DPSG benefits website. Whitley explained that evidence of coverage was not available on the benefits website and again requested evidence of coverage. McClure responded by telling Whitley that she was not under any legal obligation to provide Whitley with a copy of the United Healthcare contract.

Frustrated with the HR department, Whitley contacted United Healthcare directly to inquire about what ASD benefits were provided under the Plan. A United Healthcare representative told Whitley that she had benefits for neurological disorders of ASD. Whitley asked what that meant, and the United Healthcare representative offered a brief explanation and told Whitley that University of North Texas's Kristin Farmer Autism Center was an in-network provider under the Plan. However, when the Kristin Farmer Autism Center called to verify Whitley's benefits, United Healthcare stated Whitley did not have ASD benefits. Again, Whitley contacted United Healthcare and requested a description of the specific exclusion for ASD benefits. The United Healthcare representative refused Whitley's request and told her that United Healthcare could only send a copy of Whitley's actual denial letter. As a result of her conversations with United Healthcare, Whitley contacted McClure to obtain a copy of the 2016 Summary Plan Description. On January 12, 2016, McClure forwarded a copy of the 2015 Summary Plan Description and directed Whitley to the exclusion for applied behavioral analysis ("ABA") as treatment for ASD. However, the summary plan description forwarded to Whitley contained provisions that were not located in the 2013 Summary Plan Description ("2013 SPD"). Particularly, a provision that excluded the exact ASD treatment that Whitley had questioning the denial of coverage for.

The 2013 SPD was the only version available to Whitley and other DPSG employees on DPSG's benefits website. Whitley believed that the 2013 SPD was still in effect as there had been no finalized changes or updates. When Whitley asked McClure why the summary plan description that she provided was different from the one employees had access to and why the provisions relating to exclusions were different, McClure stated the exclusion for ABA treatment for ASD fell under the provision related to vocational rehabilitation in the 2013 SPD. Whitley

2

then contacted the Speaking Up hotline to gain clarification on the inconsistent information provided to her. The hotline routes through the legal department at DPSG and is a way for employees to report activity in the workplace that is not allowed. A representative from the Speaking Up hotline told Whitley the ABA treatment exclusion was being added to the 2016 Plan and the summary plan description submitted by McClure was the "in progress" version that would add the exclusion. When Whitley had the conversation with the Speaking Up hotline representative, the 2013 SPD was in still effect and did not explicitly exclude ABA treatment for ASD. Whitley was told that the summary plan description was updated only when major changes were made, and DPSG had ninety days from the beginning of the plan year to make changes. If any changes were made, employees would be notified of those changes in coverage. However, no updated summary plan description was available on the employee benefits website.

On January 29, 2016, Whitley pursued her claims against DPSG by filing a charge of discrimination with the Texas Workforce Commission – Civil Rights Division ("TWC"). DPSG was notified that a charge was filed. In response to her charge of discrimination, the TWC issued a notice of right to sue, allowing her to bring suit in state or federal court under Title VII of the Civil Rights Act of 1964 ("Title VII"), the American Disabilities Act of 1990 ("ADA"), and the Genetic Information Nondiscrimination Act of 2008.

Following her charge with the TWC, Whitley asserts that DPSG told representatives in the HR department and another employee to no longer speak to Whitley. Further, Whitley was told that she could not discuss issues related to her charge with the HR department. All communications were directed to McDermott, Will & Emery, legal counsel for the administrative committee appointed by DPSG. In a April 13, 2016 letter from DPSG's legal counsel, Whitley was told "the Dr. Pepper Snapple Group Health Plan (Amended and Restated

Effective January 1, 2013) remains in effect today[] and has not been amended. There is no separate Plan Document for 2014, 2015, or 2016." (Dkt. #3 at ¶ 5.15). Whitley contends that resources she is entitled to as an employee are being taken away because she pursued a discrimination claim against DPSG and questioned the denial of benefits owed to her and her son under the Plan.

On April 28, 2016, Whitley filed suit against DPSG in state court, alleging discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"), the ADA, and Title VII. DPSG removed the state action to federal court on May 31, 2016 (Dkt. #1). On June 28, 2016, DPSG filed its motion to dismiss Whitley's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) (Dkt. #10). Whitley filed her response on July 29, 2016 (Dkt. #16). On August 8, 2016, DPSG filed its reply (Dkt. #20).

## LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler*

4

*Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff is required to plead a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### A. Dismissal Pursuant to Rule 12(b)(1)

DPSG asserts that Whitley's claims are preempted by the Employee Retirement Income Security Act ("ERISA") because they involve an alleged entitlement to healthcare benefits under an ERISA-governed benefit plan. Therefore, DPSG moves to dismiss Whitley's claims and urges the Court to advise Whitley to recast them as claims for wrongful denial of benefits under ERISA Section 502(a)(1)(B), found under 29 U.S.C.§ 1132(a)(1)(b). Alternatively, DPSG moves to dismiss for Whitley's failure to exhaust her administrative remedies.

ERISA "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Line, Inc.*, 463 U.S. 85, 90 (1983). Section 502(a) of ERISA provides that a participant or beneficiary can bring a civil action seeking benefits under a plan or to enforce or to clarify any rights to future benefits under a plan. 29 U.S.C. § 1132(a)(1). Congress intended for ERISA "to provide a uniform regulatory regime over employee benefit plans" by making controversies related to such benefit plans "exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citation omitted). Therefore, there are two types of ERISA preemption: complete and express preemption. *Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002). Complete preemption exists when a remedy "falls within the scope of or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of the federal court." *Id.* Express preemption, on the other hand, exists when a state law claim "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a).

In determining whether Whitley's claims are preempted by ERISA, the Court notes that the Plan is ERISA-governed, which the parties do not dispute. Whitley's complaint alleges a state law claim under the TCHRA and federal claims under Title VII and the ADA. ERISA preemption applies only to state laws. 29 U.S.C. § 1144(b) ("Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law."). However, DPSG raises ERISA preemption as to other federal claims. Because Whitley brings claims under Title VII and the ADA, which are federal laws, ERISA preemption does not apply to those claims.

Moreover, the Court determines that ERISA express preemption does not apply to Whitley's TCHRA claim. A state law claim "relates to" an ERISA benefit plan and is preempted "if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97. The Fifth Circuit explained that "[t]he ultimate question is whether, 'if the [plaintiff's] claims were stripped of their link to the pension plans, they would cease to exist.'" *Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir. 1996) (quoting *Hook v. Morrison Milling Co.*, 38 F.3d 776, 784 (5th Cir. 1994)). Here, Whitley does not complain about the denial of coverage promised under the terms of an ERISA-regulated employee benefit plan. Instead, Whitley brings suit regarding DPSG's alleged unlawful discrimination and retaliation when it denied her benefits under the Plan. The purpose of the TCHRA is to provide for the execution of Title VII and the ADA as well as their subsequent amendments. Tex. Lab. Code Ann. § 21.001(1), (3). Whitley's TCHRA claim would have arisen whether DPSG maintained an ERISA-governed plan or some other plan. As such, the claim does "*not* 'cease to exist' when stripped of its link' to the [ERISA] plan." *Rokohl*, 77 F.3d at 129 (emphasis in original) (quoting *Hook*, 38 F.3d at 784). Therefore, ERISA does not preempt TCHRA because it stands on its own and does not "relate to" an ERISA plan. *See id.* at 130 (concluding an "ERISA-qualified plan too remote and tenuous to warrant preemption" of a TCHRA claim).

To assert her Title VII and ADA claims in federal court, Whitley must have first exhausted her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C § 2000e-5(b), (e)(1); *id.* § 12117(a). Similarly, for her TCHRA claim, Whitley must file a charge with the appropriate governmental agency within 180 days of the alleged violation. Tex. Lab. Code Ann. § 21.202. Here, Whitley's complaint

indicates that she timely filed a charge of discrimination against DPSG with the Texas Workforce Commission – Civil Rights Division (Dkt. #3 at ¶ 4.1).  Pursuant to a Worksharing Agreement between the EEOC and the Texas Commission on Human Rights, each agency is "the other[s] . . . agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency."  *Velma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000). Accordingly, Whitley's initial charge with the TWC is considered to be filed with the EEOC. On January 29, 2016, the TWC issued a notice of right to sue that authorized Whitley to bring federal claims in either state or federal court (Dkt. #3 at ¶ 4.1).  Thus, after construing the facts in Whitley's complaint in the light most favorable to her, the Court finds that Whitley has exhausted her administrative remedies.

### B. Dismissal Pursuant to Rule 12(b)(6)

DPSG challenges the factual allegations in the Whitley's complaint as failing to state a claim upon which relief can be granted.  At the motion to dismiss stage, the Court must accept as true all well-pleaded facts in Whitley's complaint and view those facts in the light most favorable to the her.  After reviewing the complaint, the motion to dismiss, the response, and the reply, the Court determines that Whitley has stated plausible claims for the purposes of defeating a Rule 12(b)(6).

## CONCLUSION

It is therefore **ORDERED** that Defendant Dr. Pepper Snapple Group, Inc.'s ("DPSG") Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim upon Which Relief Can Be Granted Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. #10) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 16th day of December, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE