# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| AMY WHITLEY, INDIVIDUALLY AND §<br>AS NEXT FRIEND TO L.K.W. §<br>§<br>v. §<br>§<br>DR PEPPER SNAPPLE GROUP, INC. §<br>§ | Civil Action No. 4:16-CV-00362<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Dr. Pepper Snapple Group, Inc.'s Motion for Summary Judgment (Dkt. #32). Having considered the pleadings, the Court finds that the motion should be granted in part and denied in part.

## BACKGROUND

In September 2015, Plaintiff's minor son, L.K.W., was diagnosed with autism spectrum disorder. Plaintiff alleges that her employer, Defendant Dr. Pepper Snapple Group, Inc. ("Dr. Pepper"), discriminated and retaliated against her in violation of the Americans with Disabilities Act of 1990 ("ADA") after it denied coverage for Applied Behavior Analysis Treatment ("ABA Treatment"), a form of therapy for autism spectrum disorder.[1]

Plaintiff and her minor son, L.K.W., are insured under the Dr. Pepper Snapple Group, Inc. Health Plan (the "Plan"). United Healthcare, Inc. ("United") serves as the Claims Administrator with respect to the Plan (Dkt. #32, Exhibit 2 at ¶ 2–3). Benefits under the Plan are determined pursuant to the effective plan document (the "Plan Document") and the effective summary plan description (the "Summary Plan Description") (Dkt. #32, Exhibit 1 at ¶ 7).

---

[1] Plaintiff's Original Petition also brought claims for violations of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act (Dkt. #3). Plaintiff's response states that she is no longer pursuing these claims (Dkt. #35 at p. 2). The Court will grant Dr. Pepper's motion in part and dismiss those claims.

Dr. Pepper amended and restated the Plan Document effective January 1, 2013 and has not restated the Plan Document since then (Exhibit 4-A at p. 1). The Plan Document does not contain any reference to ABA Treatment. The 2013 Summary Plan Description effective January 1, 2013 through December 31, 2015 governs all claims submitted during that period (Dkt. #32, Exhibit 4 at ¶ 14). The 2013 Summary Plan Description does not contain any reference to ABA Treatment (Dkt. #32, Exhibit 4–C). Specifically, "Section X UHC Standard Coverage Plan Option Schedule of Exclusions," does not list ABA Treatment as one of the "Mental Health/Substance Abuse Services" excluded from coverage (Dkt. #32, Exhibit 4C at pp. 75–76). The 2013 Summary Plan Description states, "vocational rehabilitation training is not a Covered Expense." (Dkt. #32, Exhibit 4–C at p. 65.) The 2013 Summary Plan Description also includes a "Miscellaneous Exclusions" provision that excludes coverage for "Health Services and Supplies that do not meet the definition of a Covered Expense" (Dkt. #32, Exhibit 4–C at p. 79).

On September 3, 2015, Plaintiff met with Mary McClure ("McClure"), from Dr. Pepper's Human Resources department, to discuss whether the Plan covered ABA Treatment (Dkt. #3 at ¶ 6.5). Plaintiff had a copy of the 2013 Summary Plan Description (Dkt. #3 at ¶ 6.4). McClure stated that the Plan would not cover ABA Treatment because the 2013 Summary Plan Description states that "vocational rehabilitation training is not a Covered Expense." *See* Dkt. #32, Exhibit 4–C at p. 65. Plaintiff alleges that attorneys for Dr. Pepper likewise informed her that the 2013 Summary Plan Description excluded coverage for ABA Treatment under "Miscellaneous Exclusions" for "Health Services and Supplies that do not meet the definition of a Covered Expense" (Dkt. #3 at ¶ 6.5).

Plaintiff alleges that since September 2015, she received conflicting information from Dr. Pepper and United regarding why ABA Treatment was a purported exclusion (Dkt. #3 at ¶ 6.5).

As a result, Plaintiff filed a preservice claim for ABA Treatment with United and asked United to send her a description of the specific exclusions for autism spectrum disorder in the Plan (Dkt. #35, Exhibit A at p. 4). In January 2016, Plaintiff emailed McClure requesting a copy of the Summary Plan Description containing an ABA Treatment exclusion. On January 12, 2016, McClure sent Plaintiff a draft 2015 Summary Plan Description that explicitly excluded coverage for "intensive behavioral therapies such as applied behavioral analysis for Autism Spectrum Disorders." (Dkt. #3 at ¶ 6.5). Plaintiff inquired why the draft 2015 Summary Plan Description was different from the 2013 Summary Plan Description. On January 20, 2016, Lorie Christopher ("Christopher"), Dr. Pepper's Human Resources Director, informed Plaintiff that the 2015 Summary Plan Description was only a draft and Dr. Pepper would be adding an ABA Treatment exclusion to the 2016 Summary Plan Description (Dkt. #35 at p. 7). Christopher informed Plaintiff that the 2013 Summary Plan Description was still in effect and that it did not provide coverage for ABA Treatment because it fell under "vocational therapy," which the Plan excluded. On January 20, 2016, Plaintiff received a letter from United Behavioral Health dated January 8, 2016, stating that coverage was not available for the requested services of ABA Treatment because the plan specifically excluded coverage for ABA Treatment. (Dkt. #35 at p. 8; Dkt. #34, Exhibit 2–A). Plaintiff appealed the claim denial on April 1, 2016. The appeal was denied on April 15, 2016.

According to Plaintiff, Dr. Pepper's counsel informed her that Dr. Pepper officially amended the 2016 Summary Plan Description to expressly exclude ABA Treatment on or around January 29, 2016. Plaintiff alleges that the 2016 Summary Plan Description was not posted online until on or around May 11, 2016, one day after she filed a second level appeal with United. The 2016 Summary Plan Description states that it took effect January 1, 2016 and governs all claims for services made after January 1, 2016 (Dkt. #32, Exhibit 4 at ¶ 13). The 2016 Summary Plan

Description explicitly excludes "intensive behavioral therapies such as applied behavioral analysis for Autism Spectrum Disorder" from coverage under "Section 8, Exclusions, Mental Health/Substance Use Disorder" (Dkt. #32, Exhibit 4–B at p. 68).

Plaintiff alleges that Dr. Pepper included this provision explicitly excluding coverage for ABA Treatment as a form of discrimination and retaliation for her claim requesting coverage for ABA Treatment. Dr. Pepper responds that the Plan has never approved a claim for ABA Treatment as medical treatment for autism spectrum disorder (Dkt. #32, Exhibit 1). David Olsen ("Olsen"), the Director of Benefits for Dr. Pepper states that ABA is not a Covered Expense under the Plan and that the 2016 Summary Plan Description "was edited to make clear that ABA Treatment is not covered under the Plan's terms." Olsen states that the additional provision was "only intended to clarify the Plan's existing administration, and was not an amendment or change to the Plan's terms or administration." (Dkt. #32, Exhibit. 1).

On April 28, 2016, Plaintiff filed her Original Petition in the 417th Judicial District Court for Collin County, Texas (Dkt. #1, Exhibit B). On May 31, 2016, Dr. Pepper removed the case to the Court. (Dkt. #1). On March 3, 2017, Dr. Pepper filed a motion for summary judgment (Dkt. #32). On March 31, 2017, Plaintiff filed a response (Dkt. #35). On April 21, 2017, Dr. Pepper filed a reply (Dkt. #38). On April 28, 2017, Plaintiff filed a sur-reply (Dkt. #39).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting

*Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

*ADA Claim*

The ADA prohibits an employer from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). An employee "may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Under this framework, the plaintiff must make a *prima facie* showing of discrimination by demonstrating that (1) she is associated with a disabled individual, (2) she is qualified for her job, and (3) she was subjected to an adverse employment action on account of her association with a disabled individual. *Id*. at 697 (declining to require Plaintiff to "prove causation twice" and demonstrate she was replaced by or treated less favorably than non-disabled employees). *See also Sherman v. Christus St. Michael Health Sys.*, No. 5:11CV92, 2012 WL 3587776, at *12 (E.D. Tex. July 19, 2012), *report and recommendation adopted*, No. 5:11CV92, 2012 WL 3584580 (E.D. Tex. Aug. 20, 2012) ("Plaintiff must show that: (1) she was subjected to an adverse employment action; (2) she was qualified for the job at the time; (3) she was known by Defendant to have a relative with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative was a determining factor in Defendant's decisions.").

6

Once a plaintiff establishes a *prima facie* showing of discrimination, a presumption of discrimination arises, and the employer must "articulate a legitimate non-discriminatory reason for the adverse employment action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226–27 (5th Cir. 2015). The burden then shifts to the plaintiff to show the articulated reason is pretextual. *Id.*

*Prima Facie Showing of Discrimination*

Plaintiff has made a prima facie showing of discrimination. First, Plaintiff has established she is associated with a disabled individual. Her son, L.K.W., is diagnosed with autism spectrum disorder. Dr. Pepper became aware of L.K.W's disability in September 2015, when Plaintiff met with Dr. Pepper's Human Resources department to discuss whether the Plan covered ABA Treatment. The parties do not dispute the second factor, that Plaintiff was qualified for her job.

Plaintiff has provided sufficient evidence to satisfy the third factor, that she was subject to an adverse employment action on account of her association with a disabled individual. "Adverse employment actions consist of ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating . . . an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (internal citations and quotations omitted). It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual in regard to "fringe benefits available by virtue of employment, whether or not administered by the covered entity." 29 C.F.R. §1630.4(f). "Fringe benefits are opportunities and as such cannot be denied individuals simply because they have disabilities." *Anderson v. Gus Mayer Boston Store of Delaware*, 924 F. Supp. 763, 773 (E.D. Tex. 1996). A term or provision in a health insurance plan may violate the ADA if it singles out a particular disability. *See* Dkt. #39, Exhibit B, U.S.

7

Equal Employment Opportunity Commission Notice Number 915.002, "Interim Enforcement Guidance on the application of the Americans with Disabilities Act of 1990 to disability-based distinctions in employer provided health insurance" (June 8, 1993) ("EEOC Guidelines"). *See also Anderson*, 924 F. Supp. at 772 (noting that the EEOC Enforcement Guidelines are given the highest standard of deference).

Here, the 2013 Summary Plan Description did not include any explicit exclusion for ABA Treatment. The 2016 Summary Plan Description explicitly singles out and excludes coverage for ABA Treatment. Plaintiff alleges Dr. Pepper changed the 2016 Summary Plan Description in response to and retaliation for her inquiries regarding whether the Plan covered ABA Treatment. Dr. Pepper responds that the 2016 Summary Plan Description "clarification" did not single out Plaintiff or her son because it applied to all participants. However, Plaintiff alleges that Dr. Pepper modified the 2016 Summary Plan Description to single out and exclude coverage for a particular disability after becoming aware that Plaintiff's son suffered from that disability. Plaintiff has sufficiently established that the modification and denial of fringe health insurance benefits were an adverse employment action. Plaintiff has made a prima facie showing of discrimination.

*Legitimate, Non-Discriminatory Reason for Adverse Employment Action*

The burden next shifts to Dr. Pepper to set forth a legitimate, nondiscriminatory reason for denying coverage for ABA Treatment. "[T]o meet its burden of production under *McDonnell Douglas,* an employer must articulate a nondiscriminatory reason *with 'sufficient clarity'* to afford the employee a realistic opportunity to show that the reason is pretextual." *Burton*, 798 F.3d at 231 (citing *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir.2004)).

Dr. Pepper alleges that its "legitimate, non-retaliatory reason for including a specific reference to ABA Treatment being excluded from the Plan's Covered Expense definition was to provide clarity for [Plaintiff] and other employees who may also seek coverage for that treatment

8

under the Plan." (Dkt. #32 at p. 12). Dr. Pepper argues that it has never provided coverage for ABA Treatment and informed Plaintiff that ABA Treatment was excluded from coverage under the Plan as "vocational therapy."

*Pretext*

Plaintiff must now "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir.2003). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 579 (internal quotations and citations omitted). "An explanation is false or unworthy of credence," and thus pretextual, "if it is not the real reason for the adverse employment action." *Id.* at 578.

Plaintiff provided evidence that she received conflicting information as to whether the Plan would cover ABA Treatment. Plaintiff further provided evidence that Dr. Pepper changed the 2016 Summary Plan Description to explicitly exclude ABA Treatment shortly after she inquired whether the Plan covered this therapy. Plaintiff further responds that Dr. Pepper failed to provide a legitimate business reason such as actuarial or financial analysis supporting its decision to explicitly exclude ABA Treatment from coverage.

Resolving all reasonable doubts in favor of the Plaintiff, the Court finds a genuine issue of material fact exists regarding whether Dr. Pepper's reason for excluding ABA Treatment from coverage was pretext for discrimination.

*Retaliation Claim*

"To show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc*., 179

F.3d 297, 301 (5th Cir. 1999). A defendant must then "come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "If such a reason is advanced, the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id.*

Plaintiff has established a prima facie case of retaliation. Dr. Pepper changed the 2016 Summary Plan Description to explicitly exclude ABA Treatment shortly after Plaintiff inquired whether the Plan would cover this therapy. As discussed above, a genuine issue of material fact exists as to whether Dr. Pepper's reason for explicitly denying coverage for ABA Treatment was pretext for discrimination.

## CONCLUSION

It is therefore **ORDERED** that Defendant Dr. Pepper Snapple Group, Inc.'s Motion for Summary Judgment (Dkt. #32) is hereby **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act are hereby **DISMISSED**.

**SIGNED this 4th day of May, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE